UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DONALD GUS ALLEN,<br><br>            Petitioner,<br><br>    v.<br><br>JOE A. LIZARRAGA,<br><br>            Respondent. | Case No. 5:15-cv-04387-EJD<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY**<br><br>Re: Dkt. No. 1 |

Petitioner has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his state conviction. Respondent filed an answer on the merits (Dkt. No. 14) and Petitioner filed a traverse (Dkt. No. 16). For the reasons set forth below, the petition for a writ of habeas corpus is DENIED.

## I.    BACKGROUND

On May 24, 2012, a jury found Petitioner guilty of forcible oral copulation (Cal. Penal Code § 288a(c)(2)), penetration with a foreign object (Cal. Penal Code § 289(a)(1)), corporal injury to a spouse (Cal. Penal Code § 273.5(e)), criminal threats (Cal. Penal Code § 422), false imprisonment (Cal. Penal Code § 236), and kidnapping (Cal. Penal Code § 207(a)). The court also found that petitioner had two prior strike convictions (Cal. Penal Code §§ 667(b) - (I), 1170.12), a prior serious felony conviction (Cal. Penal Code § 667(a)), and three prison priors (Cal. Penal Code § 667.5(b)). On June 21, 2012, the court sentenced petitioner to 157 years to life in state prison.

On November 28, 2012, the California Court of Appeal, First Appellate District ("Court of Appeal") affirmed the judgment in an unpublished decision. Resp. Ex. 8, Dkt. No. 14-10 at 187-208. The California Supreme Court denied review on August 13, 2014. Resp. Ex. 10, Dkt. No. 14-11 at 85.

On September 16, 2015, Petitioner filed a petition for writ of habeas corpus in the Del Norte County Superior Court ("Superior Court"). Resp. Ex. 16, Dkt. No. 15-1. The Superior Court denied the petition on January 4, 2016. Resp. Ex. 17, Dkt. No. 15-2. Petitioner then filed an original petition for writ of habeas corpus with the Court of Appeal on January 12, 2016. Resp. Ex. 11, Dkt. No. 14-12 at 3-72. The Court of Appeal summarily denied the petition on March 30, 2016. Dkt. No. 14-12 at 278. The California Supreme Court denied review on June 8, 2016. Resp. Ex. 15, Dkt. No. 14-13 at 172-73.

Meanwhile, on September 24, 2015, petitioner filed a timely petition for writ of habeas corpus in this Court. Dkt. No. 1. This Court stayed the petition pending resolution of all state habeas proceedings. Dkt. No. 8. On March 21, 2017, this Court lifted the stay. Dkt. No. 11.

## II. STATEMENT OF THE FACTS

The California Court of Appeal summarized the facts of the case as follows:

### A. Dale Silvey's Account of [T.]'s Rescue

Dale Silvey, [T.]'s son, received a call from his mother at 5:28 a.m. on March 8, 2012. Silvey heard his mother say, "Help me, Bud. I'm at the Shores."[1] [T.] sounded scared and distressed. Silvey understood "the Shores" to mean Pacific Shores, an area off Kellog Road in Crescent City, near the beach and about a mile to a mile and a half from Allen's and [T.]'s home. Silvey, his girlfriend, Annie Dixon, and their two children drove to Pacific Shores to investigate.

Silvey drove along the roads of Pacific Shores for about two hours before finding [T.]'s Toyota 4-Runner truck parked on the road. The driver's side window was broken and Silvey saw clumps of hair soaked in blood. Clothing was in the road, 100 to 150 feet from the Toyota.

Silvey observed Allen on top of [T.] in the brush, 10 to 15 feet away

---

[1] Silvey testified that "Bud" was a nickname that [T.] used for him.

Case No.: 5:15-cv-04387-EJD
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY

from the Toyota. Allen was in a kneeling position, holding a blue coat over [T.], who was lying on her side in a fetal position. When he saw Silvey, Allen, who was wearing nothing except a T-shirt, ran to the Toyota.

Silvey and Dixon approached [T.], who was huddled in the coat and crying. [T.] asked Silvey and Dixon for help and to take her away. She had twigs and sticks in her hair and a bald spot. She also had scrapes, bruises and blood, mostly dried, on her face and legs.

Silvey and Dixon picked up [T.]'s clothing and drove her back to her house. As Silvey drove, [T.] was shaking and crying, trying to cover up and hide her face. Dixon called 911 from [T.]'s house.

The police arrived and [T.] made a statement to Officer Jerrin Gill. Silvey drove back to where [T.]'s Toyota was parked and another officer followed him. When Allen saw them coming, he left the Toyota and ran into the brush. The police later found Allen lying in the brush and took him into custody.

**B. [T.]'s Statement to the Police and Medical Examination**

A video recording of [T.]'s statement to Gill was played for the jury at trial. Gill asked [T.] what happened and [T.] replied: "Just drove us out there. I don't know, like I said before. He just drove us out there. Uhm, I don't know. We just, he just kept me out there. And took me out into the woods or whatever. Out into the brush. He, right. He proceeded to take my clothes off. My shoes, threw them. My pants, ripped my pants off me. My clothes. Kept me out there. Uhm, sodomized me. Uhm, tried smothering me, killing me, choking me. Uhm ripping my insides from the inside out. Uhm, just I don't know, he just goes crazy. He's just trying to kill me. Basically, trying to kill me and hurt me. Rape me. Wanting me to, uhm, do, give him oral sex or whatever. Tried to force me to give him oral sex. Just kept me out there."

[T.] said that Allen had taken her to Pacific Shores about 1:00 or 1:30 in the morning. Allen hit her with "chunks of wood" that were on the ground and tried stuffing rocks into her mouth. When they arrived at Pacific Shores, Allen "basically drug me out of the car. Had me out on the ground. Drug me outta the car. Tried to, you know, force me to give him oral sex." Allen then "proceeded to rip my clothes off. Threw my shoes out in the brush." [T.] continued: "He took my shoes, threw them ou[T.] He ripped my pants off. My underwear. He, uhm. He inserted his hands inside my insides. [¶] He forced his fingers in to my rectum and was pulling on my insides. [¶] He tried smothering me and choking me."

[T.] said that Allen tried choking her with his hands and smothering her with his jacket. She reached the point that she couldn't breathe because of what Allen was doing. [T.] was begging Allen to stop and yelling for help. She believed that Allen had stuffed debris inside of her.

Case No.: 5:15-cv-04387-EJD
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY

3

At one point Allen's pants were down and [T.] was able to get back into the Toyota. [T.] wanted to drive away, but was unable to start the vehicle. She locked the doors and made a phone call, but Allen broke the driver's side window. [T.] told Gill: "He's done this to me, he's taken me out there before. He's taken my phone, he's been taking clothes and leaving me out there. (unintelligible) but this is the worst time he's raped me. This is the worst."

[T.] was taken to the hospital where she was treated by Dr. George Isenhart. [T.] told Isenhart that she had been assaulted, had been beaten with sticks and fists, and had been assaulted vaginally and rectally. Isenhart noted tenderness on [T.]'s scalp, neck, abdomen and sacrum. [T.] had bruises on her back, thighs, and legs and abrasions on her buttocks. Isenhart observed rectal tenderness and a hemorrhoid that could have been caused by Allen inserting his fingers into her rectum and pulling.

**C. Allen's Phone Calls from Jail**

Recordings of 11 phone calls that Allen made from jail were played for the jury at trial. In one call, Allen told [T.] to inform Silvey and Dixon that they could have his Jeep if they did not testify. Allen told [T.]: "[W]e were asleep when [Silvey and Dixon] showed up." In another call, Allen told [T.] to talk to an attorney "and see what he says about if you can change your story." In yet another conversation, Allen told [T.], "[I]f you go down and change your statements I wouldn't have to worry about being gone that long. You have to do it before I fucking—before we start going to court, though. [¶] Just walk in and tell them we were on fucking crystal meth and we were drunk and on pain pills. . . . [¶] You could get an attorney and go down and change your statements. Just tell them everything was consensual and there ain't nothing they can do but drop the charges."

[T.] also told Allen in the telephone conversations about what he did to her during the night in question: "Yeah, my head, the whole right top of my head is completely bald from where you pulled all my hair out. . . . My whole back side is just road rash from you dragging me around." She told Allen that he caused her "permanent damage," that he "[p]ulled [her] rectum inside out" 10 times, and that he "[slugged her in her] stomach as hard as [he] could" four times.

**D. [T.]'s Testimony at Trial**

At trial, [T.] testified that when she spoke to Gill, "I believe what I told him was what I felt was the truth, but exaggerated." Before driving to Pacific Shores on the night in question, she and Allen drank a half-gallon bottle of whiskey and used methamphetamine. She said that she and Allen drove to Pacific Shores to make out and talk and that they were there between four and six hours. They did not have sexual intercourse and Allen never forced her to do anything that was sexual in nature.

At one point, [T.] went back to the truck because she was cold and didn't want to be outside any longer. When she entered the truck, she locked the doors because she was thinking about leaving Allen there. She also locked the doors so she would have time to make a phone call to her son. She did not have the key to the truck and she needed help from her son to find the keys and get a ride home. Up to that point, Allen had not been angry with her, but she felt scared being there in the dark and Allen "was in some hallucinatory state of mind thinking there was other people out there that were going to . . . get me or him." Allen was talking to people she couldn't see and this started about an hour before she got into the truck. Allen banged on the window of the truck and then broke it. [T.] exited the truck from the passenger side; Allen did not force her. [T.] began looking for her clothes so she could get dressed and "get out of there." Allen came around to her and they laid down on the ground. She and Allen "stayed close to each other, lying on the ground next to the truck" until Silvey found them. Allen never forced her to do anything that night. The only thing to which [T.] did not consent was being at Pacific Shores for four to six hours. [T.] was unsure if Allen inserted his fingers into her rectum that night. At one point that night, [T.] gave Allen oral sex, but it was consensual. [T.] denied that Allen ripped her clothes off, raped her, smothered her, choked her, put rocks in her mouth, or threatened to kill her.

Resp. Ex. 8 at 3-7.

## III.    DISCUSSION

### A.    Standard of Review

This Court may entertain a petition for a writ of habeas corpus "on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Rose v. Hodges*, 423 U.S. 19, 21 (1975). The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim:

"(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if

the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (20000). The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. *Williams*, 529 U.S. at 412; *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004). While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied. *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003), *overruled on other grounds by Lockyer v. Andrade*, 538 U.S. 63 (2003).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. "Under § 2254(d)(1)'s 'unreasonable application' clause, . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409. The federal habeas court must presume to be correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Here, on direct appeal, the California Supreme Court summarily denied Petitioner's petition for review. Resp. Ex. 10. The Court of Appeal addressed Claims VI-XI in the instant petition. Resp. Ex. 8. The Court of Appeal thus was the highest court to have reviewed the Claims VI-XI in a reasoned decision, and accordingly it is the Court of Appeal's decision that this Court reviews with respect to these claims. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991);

*Barker v. Fleming*, 423 F.3d 1085, 1091-92 (9th Cir. 2005). The remainder of Petitioner's claims in the instant petition, Claims I-V, appear in his state habeas petition. Resp. Ex. 16. The Court of Appeal summarily denied the petition, and the California Supreme Court denied review. Dkt. No. 14-12 at 278; Resp. Ex. 15. The Superior Court, however, addressed these claims. Resp. Ex. 17. The Superior Court thus was the highest court to have reviewed Claims I-V in a reasoned decision, and accordingly it is the Superior Court's decision that this Court reviews with respect to these claims. *See Ylst*, 501 U.S. at 803-04; *Barker*, 423 F.3d at 1091-92.

The Supreme Court has vigorously and repeatedly affirmed that under AEDPA, a federal habeas court must give a heightened level of deference to state court decisions. *See Hardy v. Cross*, 565 U.S. 65 (2011) (per curiam); *Harrington v. Richter*, 131 S. Ct. 770, 783-85 (2011); *Felkner v. Jackson*, 131 S. Ct. 1305 (2011) (per curiam). As the Court explained: "[o]n federal habeas review, AEDPA 'imposes a highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt.'" *Id.* at 1307 (citation omitted). With these principles in mind regarding the standard and limited scope of review in which this Court may engage in federal habeas proceedings, the Court addresses Petitioner's claims.

## B.    Claims and Analysis

Petitioner asserts the following grounds for relief: (1) trial counsel's decision not to present a defense medical expert constituted ineffective assistance of counsel; (2) admission of the prosecution's expert's testimony concerning battered woman's syndrome deprived petitioner of a fair trial; (3) the trial court's unanimity instruction violated due process; (4) omitting an instruction on kidnapping concerning incidental distance violated due process or fair trial rights; (5) Petitioner's conviction for false imprisonment violated double jeopardy, due process, or fair trial rights; (6) omitting an instruction concerning trivial distances violated due process or fair trial rights; (7) there was insufficient evidence of the forcible oral copulation conviction; (8) there was insufficient evidence of the kidnapping conviction; (9) the prosecutor's closing misstated the law

in violation of due process; (10) trial counsel rendered ineffective assistance by failing to object to the instructions or arguments; and (11) the state court violated due process by imposing a separate punishment for the spousal abuse conviction and the criminal threat conviction.

### i. Ineffective Assistance of Counsel by Not Presenting a Defense Medical Expert

Petitioner's first claim is that he received ineffective assistance of counsel because his trial counsel failed to present a defense medical expert who would have testified that T.'s injuries were consistent with consensual sex, that her hemorrhoid was pre-existing, and that she did not have prolapsed rectum. Pet. 11-18. Petitioner complains that trial counsel made this decision based on an "irrational and uninformed" "gut" feeling which he formed after considering T.'s expected testimony, the photographs, and "other physical evidence." *Id*. at 18.

The Superior Court rejected this claim in Petitioner's state habeas petition, reasoning in relevant part as follows:

> Petitioner claims that had the trial counsel retained a medical defense expert, he would have refuted victim's claims and a different outcome would have occurred. In support of this Petition, Petitioner attaches a declaration not under penalty of perjury from a Dr. Sinkhorn, a medical physician. Dr. Sinkhorn confirms and agrees with the Prosecution medical expert, Dr. Isenhart that trauma can be one of the causes of rectal prolapse. He additionally states "In my opinion it is highly unlikely that a prolapsing hemorrhoid would be freshly created during several minutes or hours of one episode of anal penetration, even if not consensual. Regardless, Dr. Isenhart testified that he "did not observe a prolapsed rectum". Dr. Sinkhorn states in a letter that there is no evidence linking any vulvovaginal or anorectal condition save for tenderness to the events. Thus Dr. Isenhart's findings are consistent with either consensual or nonconsensual activity.
>
> Petitioner claims Dr. Sinkhorn's testimony would have proved that the victim lied to Petitioner during a phone call (apparently during one of the phone calls petitioner made while trying to suborn perjury from the victim or pressure her into changing her story so he could escape prosecution[2]). Petitioner now claims that the lack of hemorrhoid freshness is a significant defense. However, in Dr. Sinkhorn's own words, his "findings" are consistent with either

---

[2] The contents of the phone calls were not provided as part of the Petition for the Court's consideration.

Case No.: 5:15-cv-04387-EJD
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY

consensual or nonconsensual activity. Dr. Sinkhorn does not address the road rash on the victim's back from being dragged and the bruises on her thighs and buttocks stemming from the attack. Petitioner provides no other support for the conclusion that the jury would have found otherwise beyond mere conjecture postured in the pleadings.

. . .

Petitioner points out that trial counsel chose a specific tactic not to call a doctor based on expected victim testimony, photographs, and other physical evidence.[3] Such a decision appears to have been a tactical one made by trial counsel, not ineffective assistance of counsel, as relying upon expected testimony, the photographs (perhaps the lack rectal bleeding in this case), and other physical evidence may have been less detrimental (per trial counsel's email). Regarding expected testimony and in light of the multitude of disclosed jail house phone calls from the Petitioner to the victim played to the jury, the Court can infer that trial counsel relied upon the pressure that the defendant placed upon the victim to change her story. A recanting victim who succumbs to the attempts by the defendant to possibly suborn perjury, as inferred here by all of the phone calls from the defendant to the victim attempting to get her to change her story or tell the prosecution or jury a different story. As such, Petitioner provides no other support for the conclusion that the jury would have found otherwise beyond mere conjecture postured in the pleadings. The claim is denied based on the above.

Resp. Ex. 17 at 3-4 (footnote in original).

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Id.*

In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, Petitioner must establish two things. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Strickland*, 466 U.S. at 687-88. Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's

---

[3] Said trial tactic is contained in a very sparse email not under penalty of perjury from Trial Counsel.

1 unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A

2 reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

3 Where the evidence does not warrant it, the failure to call an expert does not amount to

4 ineffective assistance of counsel. *See Wilson v. Henry*, 185 F.3d 986, 990 (9th Cir. 1999) (a

5 decision not to pursue testimony by a psychiatric expert is not unreasonable when the evidence

6 does not raise the possibility of a strong mental state defense). Nor is a defendant prejudiced by

7 counsel's failure to call an expert witness to testify when the expert's opinion would be

8 cumulative of evidence that was already before court. *See Gulbrandson*, 711 F.3d at 1039

9 (finding no IAC during sentencing in capital case where counsel failed to recall his expert at

10 sentencing to testify about defendant's state of mind at the time of crime because such an opinion

11 was already before the sentencing court).

12 Here, the Superior Court reasonably determined that trial counsel's decision to not present

13 a defense medical expert did not amount to ineffective assistance of counsel. As discussed by the

14 Superior Court, trial counsel indicated in an email written not under penalty of perjury that he

15 decided not to "use[]" a medical expert "[b]ased on [T.]'s expected testimony and the photographs

16 and the other physical evidence." Pet. Ex. H, Dkt. No. 1-2 at 195. This, as an unsworn statement,

17 cannot be considered evidence that can "overcome the 'strong presumption that counsel's conduct

18 [fell] within the wide range of reasonable professional assistance.'" *Burt v. Titlow*, 571 U.S. 12,

19 23 (2013).

20 However, even if the Court were to take this statement at its word, it does not support

21 Petitioner's claim. Instead, as the Superior Court correctly observed, it reflects a tactical weighing

22 of the decision to use a defense medical expert against the other evidence that will be presented at

23 trial. *Cf. Lord v. Wood*, 184 F.3d 1083, 1095 (9th Cir. 1999) ("Few decisions a lawyer makes

24 draw so heavily on professional judgment as whether or not to proffer a witness at trial."). For

25 example, trial counsel could have determined that, given that a defense medical expert like Dr.

26 Sinkhorn would have only testified that the medical evidence did not preclude consensual acts or

27

28 Case No.: 5:15-cv-04387-EJD
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE
OF APPEALABILITY

10

United States District Court
Northern District of California

prior conditions, it would not have been worth the effort or expense to present such a witness at trial. This conclusion seems even more reasonable when considered in the context of medical evidence that appeared to weigh in favor of finding a lack of consent or that certain conditions were not preexisting. *See* Resp. Ex. 2, Dkt. No. 14-6 at 315-16 (prosecution medical expert testifying that tenderness, hemorrhoids, and prolapsed rectum could have been caused by constipation or by pulling repeatedly with fingers); Pet. Ex. C, Dkt. No. 1-2 at 40 ("Dr. Isenhart correctly testified that trauma can be one of the causes of rectal prolapse."). Viewed in this light, trial counsel's decision seems objectively reasonable and the kind of tactical decision that does not constitute deficient performance under *Strickland*. Accordingly, the Superior Court's determination that Petitioner did not receive ineffective assistance of counsel on these grounds was not unreasonable. Petitioner is not entitled to habeas relief on this claim.

> **ii.    Deprivation of Due Process and a Fair Trial by Admission of Prosecution Expert Testimony Concerning Battered Woman's Syndrome; Ineffective Assistance of Appellate Counsel By Not Raising Issue**

Petitioner's second claim is that he was denied due process and a fair trial because the trial court permitted Alison Baxter, a victim/witness coordinator and advocate at the district attorney's office, to testify as an expert witness about battered women's syndrome. Pet. 19-27. According to Petitioner, admission of this testimony violated his due process rights because (1) Baxter was not an expert on the cycle of violence and (2) she allegedly vouched for the victim's credibility. *Id*. Petitioner also claims that he received ineffective assistance of counsel because his appellate counsel did not raise this issue on direct appeal. *Id*. at 27.

The Superior Court rejected this claim in Petitioner's state habeas petition, reasoning in relevant part as follows:

> Based on [California Evidence Code §§ 1107 and 720], the expert may qualify through experience, training, or education. The Trial Court must decide if a proposed expert qualifies on that subject. (*People v. Hogan*, 31 Cal. 3d 815, 851) There is no requirement in the Code for a formal degree, certificate, or license. In this matter, the People proffered Ms. Baxter as an expert in the field of Battered Woman's Syndrome. Baxter had undergone 160 hours of course or class work regarding Battered Woman's Syndrome. The finding that

she could testify was made by the Court outside the presence of the jury and over objection of the Petitioner. It appears from the record that she was more knowledgeable than the public and said information could prove helpful to the trier of fact per Evidence code § 1107. There does not appear any obvious abuse by the trial court in such a ruling.

It is noted that Trial Counsel did hire a psychologist but opted not to put him on the stand as his testimony would be damaging to the defendant (thus trial counsel did not render ineffective assistance of counsel due to his tactical decision). Further, Baxter was subject to a full cross examination by Petitioner's trial counsel. As such, appellate counsel did not render Ineffective Assistance of Counsel as the appeal would have been futile. Appellate counsel is under no obligation to file frivolous claims or unmeritorious appeals, especially in light of the record provided to the Court. (*Smith v. Robbins* 528 U.S. 259.)

Resp. Ex. 17 at 5. The Superior Court also rejected Petitioner's argument that Baxter impermissibly vouched for T.'s credibility, reasoning as follows:

Petitioner claims that Baxter vouched for Victim's credibility during the trial. The pleadings fail to note whether an objection was made as none were noted in the transcript. The record provided with the petition does not support the contention that the expert vouched for the victim's credibility. Such assertion is an untenable stretch of the truth based upon the transcript submitted in the Petition. The expert does not state she vouched for the victim's credibility. Instead the Expert stated she has personally seen some victims, when everything is fresh in the victim's mind, tell the story honestly because she's still in trauma mode. The expert opines about the circle of violence and the honeymoon stages that revolve around it. However, the Expert did not assess the victim's testimony nor opine on her credibility. Baxter testified in her experience 80% of the victims recant.[4] Such foundation for that observation was subject to cross-examination.

As no objection was made at trial nor raised on appeal, the objection is waived. It is unclear by the pleadings whether Petitioner is placing this matter before this Court upon the rubric of ineffective assistance of counsel. As such it is dismissed. Nevertheless, the Court finds based on the pleadings presented so far that the trial and appellate counsel did not render Ineffective Assistance of Counsel as the appeal would have been futile as they are under no obligation to file frivolous claims or unmeritorious appeals. (*Smith v. Robbins* 528 U.S. 259.)

*Id*. at 5-6 (footnotes in original).

[4] Petitioner inaccurately states 85% in the pleadings.

The Court first addresses the issue of procedural default, and then turns to the merits of Petitioner's remaining claims.

### a. Procedural Default

A federal court will not review questions of federal law decided by a state court if the decision also rests on a state law ground that is independent of the federal question and adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). The procedural default rule is a specific instance of the more general "adequate and independent state grounds" doctrine. *Wells v. Maass*, 28 F.3d 1005, 1008 (9th Cir. 1994). In cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Id.* at 750.

The Ninth Circuit has recognized and applied the California contemporaneous objection rule in affirming denial of a federal petition on grounds of procedural default where there was a complete failure to object at trial. *See Inthavong v. Lamarque*, 420 F.3d 1055, 1058 (9th Cir. 2005); *Paulino v. Castro*, 371 F.3d 1083, 1092-93 (9th Cir. 2004); *Vansickel v. White*, 166 F.3d 953, 957-58 (9th Cir. 1999).

Here, the Superior Court concluded that, because trial counsel did not object at trial that Baxter impermissibly vouched for T.'s credibility,[5] his habeas claim on this basis should be dismissed. Implicitly, this was a determination that he failed to comply with California's contemporaneous objection rule and, as a result, procedurally defaulted his claim. As such, the Superior Court's determination rests on an independent and adequate state law ground which this Court cannot review. *See Wells*, 28 F.3d at 1008.

---

[5] Trial counsel generally objected to Baxter's testimony, but did not object to it on the grounds of vouching.

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY

United States District Court
Northern District of California

Petitioner does not cite to any cause for this procedural default, nor does he contend that he has suffered prejudice. He also does not contend that failure to consider this claim will result in a substantial miscarriage of justice. Accordingly, the Court cannot review Petitioner's claim that he was denied due process and a fair trial on the basis that Baxter impermissibly vouched for T.'s credibility.[6] The Court thus proceeds to evaluate Petitioner's due process and fair trial claim on the only other basis he raises: that Baxter was not an expert on the cycle of violence.

### b. Due Process and Right to Fair Trial

The admission of evidence is not subject to federal habeas review unless a specific constitutional guarantee is violated or the error is of such magnitude that the result is a denial of the fundamentally fair trial guaranteed by due process. *See Henry v. Kernan*, 197 F.3d 1021, 1031 (9th Cir. 1999); *Colley v. Sumner*, 784 F.2d 984, 990 (9th Cir. 1986), *cert. denied*, 479 U.S. 839 (1986). "[T]he acts complained of must be of such quality as necessarily prevents a fair trial." *Lisenba v. California*, 314 U.S. 219, 236 (1941).

Failure to comply with state rules of evidence is neither a necessary nor a sufficient basis for granting federal habeas relief on due process grounds. *See Henry*, 197 F.3d at 1031; *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991). While adherence to state evidentiary rules suggests that the trial was conducted in a procedurally fair manner, it is certainly possible to have a fair trial even when state standards are violated; conversely, state procedural and evidentiary rules may countenance processes that do not comport with fundamental fairness. *See id.* (citing

---

[6] Even if the Court were permitted to entertain Petitioner's habeas claim on this ground, the Court would have determined that the Superior Court reasonably determined that Petitioner was not denied due process and a fair trial on the basis that Baxter impermissibly vouched for T.'s credibility. There is no evidence that, at trial, Baxter directly opined on T.'s credibility. Instead, she simply testified that "eighty percent of domestic violence victims will recant their story or minimize their story" and explained the reasons why that might be the case. Pet.'s Ex. E at 419-20. The Superior Court reasonably determined that this testimony did not encroach the jury's province of determining witness credibility and deprive Petitioner of a fair trial. Baxter did not directly connect these statistics to T., and the jury remained free to conclude that this general observation was not true in T.'s particular case. *Cf. United States v. Cazares*, 788 F.3d 956, 978 (9th Cir. 2015) (holding that "[t]he more general testimony regarding . . . gang members' attitudes" was permissible, even if expert's testimony identifying specific defendants to have certain characteristics was not).

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY

United States District Court
Northern District of California

*Perry v. Rushen*, 713 F.2d 1447, 1453 (9th Cir. 1983), *cert. denied*, 469 U.S. 838 (1984)). The due process inquiry in federal habeas review is whether the admission of evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair. *Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir. 1995); *Colley*, 784 F.2d at 990. But note that only if there are no permissible inferences that the jury may draw from the evidence can its admission violate due process. *See Jammal*, 926 F.2d at 920.

Here, the Superior Court reasonably determined that permitting Baxter's expert testimony did not deny Petitioner due process or a fair trial. As the Superior Court noted, California Code of Evidence § 720 provides that "[a] person is qualified to testify as an expert if he has special knowledge, skill, experience, training, or education sufficient to qualify him as an expert on the subject to which his testimony relates." Baxter had worked at the victim/witness office for 15 years, with 80 percent of her time spent in providing direct services to victims of crimes. Resp. Ex. 2 at 370. She received 160 hours of training, plus 16 hours a year of continuing education training and yearly trainings at a victim's advocate conference. Resp. Ex. 2 at 371-72. As such, she at least had "special knowledge, skill, experience, [and] training" on battered woman's syndrome. In deciding Petitioner's claim for habeas relief, the Superior Court reasonably consulted these standards and concluded that permitting Baxter's testimony did not prevent a fair trial. The trial court had a reasoned basis for allowing her to testify as an expert and, to the extent that a lack of formal education cast doubt on her credibility as an expert, Petitioner's trial counsel had the opportunity to cross-examine her and explore these weaknesses in front of the jury. Accordingly, the Superior Court's rejection of Petitioner's due process and fair trial claims was not unreasonable.

Petitioner's arguments to the contrary are not persuasive. Petitioner contends that, because Baxter did not have formal education relating to battered woman's syndrome—such as a college degree in psychology—she should not have been permitted to testify on the psychology of battered woman's syndrome, including the cycle of violence and the expected behavior of

offenders and victims. Pet. 21-23. Due process does not require every expert to have a college degree. *Cf. Henry*, 197 F.3d at 1031 ("Even where it appears that evidence was erroneously admitted, a federal court will interfere only if it appears that its admission violated fundamental due process and the right to a fair trial."). Accordingly, the Superior Court was not unreasonable in determining that this aspect of Baxter's testifying did not deprive Petitioner of due process and a fair trial. Petitioner is not entitled to habeas relief on this claim.

### c. Ineffective Assistance of Counsel

The Due Process Clause of the Fourteenth Amendment guarantees a criminal defendant the effective assistance of counsel on his first appeal as of right. *Evitts v. Lucey*, 469 U.S. 387, 391-405 (1985). Claims of ineffective assistance of appellate counsel are reviewed according to the standard set out in *Strickland*, 466 U.S. at 668. *Smith*, 528 U.S. at 285; *Moormann*, 628 F.3d at 1106; *Miller v. Keeney*, 882 F.2d 1428, 1433 (9th Cir. 1989). First, the petitioner must show that counsel's performance was objectively unreasonable, which in the appellate context requires the petitioner to demonstrate that counsel acted unreasonably in failing to discover and brief a merit-worthy issue. *Smith*, 528 U.S. at 285; *Moormann*, 628 F.3d at 1106. Second, the petitioner must show prejudice, which in this context means that the petitioner must demonstrate a reasonable probability that, but for appellate counsel's failure to raise the issue, the petitioner would have prevailed in his appeal. *Smith*, 528 U.S. at 285-86; *Moormann*, 628 F.3d at 1106.

It is important to note that appellate counsel does not have a constitutional duty to raise every nonfrivolous issue requested by defendant. *See Jones v. Barnes*, 463 U.S. 745, 751-54 (1983); *Gerlaugh v. Stewart*, 129 F.3d 1027, 1045 (9th Cir. 1997); *Miller*, 882 F.2d at 1434 n.10. The weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy. *See Miller*, 882 F.2d at 1434. Appellate counsel therefore will frequently remain above an objective standard of competence and have caused his client no prejudice for the same reason: because he declined to raise a weak issue. *Id.*

Here, the Superior Court reasonably determined that Petitioner did not receive ineffective

assistance of counsel because his appellate counsel did not, on direct appeal, raise the issue that permitting Baxter to testify deprived him of due process and a fair trial. As discussed above, the first prong of *Strickland* requires that counsel's performance be objectively unreasonable. Here, objectively reasonable counsel could have assessed the complaints that Petitioner now raises against Baxter and determined that these were weak or frivolous issues to raise on appeal. For example, because Baxter had relevant "special knowledge, skill, experience, [and] training" on battered woman's syndrome, her testimony was likely admissible under the California Code of Evidence and objectively reasonable appellate counsel could have concluded that it would have been frivolous to argue on appeal that permitting admissible testimony deprived Petitioner of due process or a fair trial. As another example, because trial counsel did not object to Baxter's testimony as a form of vouching and thereby waived this argument, objectively reasonable appellate counsel could have concluded that it would have been frivolous to attempt to raise this issue on appeal. Even if there had been no waiver, objectively reasonable appellate counsel could have also determined that this claim was weak or frivolous on the merits: Baxter did not directly opine on T.'s credibility and only testified regarding a general statistic on recantation rates in domestic violence cases. Accordingly, for all these reasons, it was reasonable to determine that appellate counsel's performance was not objectively unreasonable and therefore not deficient under the first prong of *Strickland*. Thus, the Superior Court reasonably determined that Petitioner did not receive ineffective assistance of counsel on this basis. Petitioner is not entitled to habeas relief on this claim.

### iii. Deprivation of Due Process and a Fair Trial by Not Issuing a Unanimity Instruction; Ineffective Assistance of Appellate Counsel By Not Raising Issue

Petitioner's third claim is that he was denied due process and a fair trial because the trial court did not issue a unanimity instruction. Pet. 28-34. Petitioner also claims that he received ineffective assistance of counsel because his trial and appellate counsel did not raise this issue at trial or on direct appeal. *Id*. at 33-34.

The Superior Court rejected this claim in Petitioner's state habeas petition, reasoning as

follows:

> Here, after reviewing what limited record the Petitioner provided with the Petition, the Petitioner kidnapped, beat, and sodomized the victim over the course of six to seven hours one early morning. Petitioner's conduct clearly constituted a continuous course of conduct perpetrated upon the victim. Therefore, there was no *sua sponte* duty by the Court to instruct on unanimity. There is no documentation supporting whether such instruction was even requested. Such issue was not appealed. The claim is meritless based on the above arguments as presented to the Court. As such the claim is denied.

Resp. Ex. 17 at 6.

### a. Due Process and Right to Fair Trial

Criminal defendants in state court have no federal constitutional right to a unanimous jury verdict. *See Apodaca v. Oregon*, 406 U.S. 404, 410-12 (1972) (rejecting 6th Amendment right to jury trial challenge to 10-2 state jury verdict); *Johnson v. Louisiana*, 406 U.S. 356, 359-63 (1972) (rejecting due process challenge to 9-3 state jury verdict). The Sixth Amendment also does not require the jury to unanimously choose one theory of guilt. *Taylor v. Beard*, 811 F.3d 326, 332-334 (9th Cir. 2016) (en banc) (finding no Sixth Amendment violation where sufficient evidence at trial proved petitioner's guilt as either shooter or abettor, notwithstanding finding at sentencing that he was not shooter); *see Schad v. Arizona*, 501 U.S. 624, 631-32 (1991) (plurality opinion) (allowing jurors to rely on different theories in order to return guilty verdict).

Although criminal defendants in state court have no federal constitutional right to a unanimous jury verdict, California requires unanimity of a verdict from all twelve jurors in a criminal trial. *See* Cal. Const. art. I, § 16; *People v. Engelman*, 28 Cal. 4th 436, 442 (2002). An instruction that unanimity of verdict is essential to a criminal trial, e.g., CALJIC No. 17.50, should be given *sua sponte*. *See* CALJIC No. 17.50 Use Note (citing *People v. Howard*, 211 Cal. 322, 325 (1931)). California also requires that a specific unanimity instruction, e.g., CALJIC No. 17.01, be given *sua sponte* whenever more than one act could constitute the offense charged. *See People v. Diedrich*, 31 Cal. 3d 263, 281 (1982). However, California imposes no *sua sponte* duty to provide a unanimity instruction if the offense constitutes a "continuous course of conduct."

*People v. Maury*, 30 Cal. 4th 342, 423 (2003).  The continuous course of conduct exception applies when "the acts are so closely connected that they form part of one and the same transaction, and thus one offense [or] there is a continuous course of conduct of a series of acts over a period of time." *People v. Avina*, 14 Cal. App. 4th 1303, 1309 (1993) (internal quotation marks omitted).

However, because "federal habeas corpus relief does not lie for errors of state law," *Lewis v. Jeffers*, 497 U.S. 764, 765 (1990), a trial court's failure to give a unanimity instruction—even when required by California law—does not by itself raise a ground cognizable in a federal habeas corpus proceedings.  *See Dunckhurst v. Deeds*, 859 F.2d 110, 114 (9th Cir. 1988).  Instead, "[t]he error must so infect the entire trial that the defendant was deprived of his right to a fair trial guaranteed by the due process clause of the fourteenth amendment." *Id.* (quoting *Tyler v. Wyrick*, 635 F.2d 752, 753 (8th Cir.1980), cert. denied, 452 U.S. 942 (1981)).  Due process requires that "'criminal defendants be afforded a meaningful opportunity to present a complete defense.'" *Clark v. Brown*, 450 F.3d 898, 904 (9th Cir. 2006) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)).  In federal criminal cases, the Ninth Circuit has held that "[a] defendant is entitled to an instruction on his defense theory only "if the theory is legally cognizable and there is evidence upon which the jury could rationally find for the defendant." *United States v. Boulware*, 558 F.3d 971, 974 (9th Cir. 2009) (internal quotations omitted).

Here, the Superior Court determined that Petitioner's conduct clearly constituted a continuous course of conduct, and, as such, the trial court had no *sua sponte* duty to instruct on unanimity.  This is a state court determination on an issue of state law, which this Court cannot disturb.  *Bradshaw v. Richey*, 546 U.S. 74, 76, 126 S. Ct. 602, 604, 163 L. Ed. 2d 407 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").

Nevertheless, this Court may still grant habeas relief if the Superior Court's determination is contrary to, or an unreasonable application of, clearly established federal law.  28 U.S.C.

§ 2254(d). On that issue, the Court finds in the negative. No Supreme Court precedent clearly establishes that a state criminal defendant is entitled to a unanimous jury verdict in a noncapital case. *Apodaca*, 406 U.S. at 410-12; *Johnson*, 406 U.S. at 359-63; *see also Hassan v. Morawcznski*, 405 F. App'x 129, 131-32 (9th Cir. 2010) (concluding that state trial court's failure to give unanimity instruction did not entitle petitioner to habeas relief because "Supreme Court has never held jury unanimity to be a requisite of due process of law") (internal quotation marks omitted).

Further, to the extent Petitioner argues that the trial court's failure to instruct the jury on unanimity violated his due process and fair trial rights, this argument falters as Petitioner has failed to establish that this decision so infected the entire trial such that Petitioner was deprived of these guarantees. *See Dunckhurst*, 859 F.2d at 114. As the record suggests, Petitioner committed a stream of abusive acts over the span of several hours, and the evidence at trial tended to reference them collectively. *See* Resp. Ex. 8 at 18 ("the evidence in this case does not allow for an accounting of which of Allen's acts occurred before the kidnapping and which occurred after."). For example, in the video recording of T.'s statement to police that was played for the jury at trial, T. merely stated that Petitioner "sodomized me . . . tried smothering me, killing me, choking me . . . . [t]ried to force me to give him oral sex." Resp. Ex. 3 at 1. She did not break these up into isolated events that happened at separate points in time. *See id*. at 1-9. The medical evidence also only showed injuries (and, consequently, likely abusive acts) that had happened over the course of the entire period. Petitioner also refuted the charges against him collectively, as his defense was a wholesale denial of abuse. In light of this, it does not appear that Petitioner was denied "a meaningful opportunity to present a complete defense." *California*, 467 U.S. at 485. Nothing about his denial of abuse was meaningfully foreclosed by the trial court's refusal to give a unanimity instruction. Accordingly, the Superior Court was not unreasonable in determining that the lack of a unanimity instruction did not deprive Petitioner of due process and a fair trial. Petitioner is not entitled to habeas relief on this claim.

### b. Ineffective Assistance of Counsel

As discussed above, a claim for ineffective assistance of counsel must satisfy the two-prong test set forth in *Strickland*, 466 U.S. at 687. First, Petitioner must demonstrate that counsel's performance was deficient, i.e., that it "so undermined the proper functioning of the adversarial process that the [proceedings] cannot be relied on as having produced a just result." *Id*. at 686-87. Second, Petitioner must demonstrate that counsel's deficient performance prejudiced him, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

Here, the Superior Court reasonably determined that Petitioner did not receive ineffective assistance of counsel because his trial and appellate counsel failed to complain about the lack of a unanimity instruction. As discussed above, California does not require a trial court to provide a unanimity instruction if the offense constitutes a "continuous course of conduct." *People v. Maury*, 30 Cal. 4th 342, 423 (2003). Here, objectively reasonable counsel could have determined that Petitioner's abusive acts constituted a "continuous course of conduct" such that the trial court was not obligated to instruct on unanimity. The evidence at trial tended to describe these acts collectively, rather than parsing them into separate acts that were committed at discrete intervals. *See, e.g.*, Resp. Ex. 3 at 1-9. Accordingly, objectively reasonable trial and appellate could have determined that it would have been futile or frivolous to complain about the lack of a unanimity instruction. *See Jones*, 463 U.S. at 751-54 (appellate counsel does not have a duty to raise every nonfrivolous issue); *Knowles v. Mirzayance*, 556 U.S. 111, 125, 127 (2009) ("It was not unreasonable for the state court to conclude that his defense counsel's performance was not deficient when he counseled [petitioner] to abandon a claim that stood almost no chance of success."). As such, their performance was not deficient under the first prong of *Strickland*, and the determination that there was no ineffective assistance of counsel was not unreasonable. Petitioner is not entitled to habeas relief on this claim.

### iv. Deprivation of Due Process and a Fair Trial by Omitting an Instruction on Kidnapping Concerning Incidental Distance; Ineffective Assistance of Appellate Counsel By Not Raising Issue

Petitioner's fourth claim is that he was denied due process and a fair trial because the trial court did not include language regarding incidental movement in its jury instruction on kidnapping. Pet. 28-34. At trial, the court provided the following written instruction regarding the kidnapping charge, with the exception of the bracketed portion:

> The defendant is charged in Count 6 with kidnapping in violation of Penal Code section 207(a).
>
> To prove that the defendant is guilty of the crime, the People must prove that:
>
> 1. The defendant took, held, or detained another person by using force or by instilling reasonable fear;
>
> 2. Using that force or fear, the defendant moved the other person or made the other person move a substantial distance;
>
> AND
>
> 3. The other person did not consent to the movement;
>
> AND
>
> 4. The defendant did not actually and reasonably believe that the person consented to the movement.
>
> In order to consent, a person must act freely and voluntarily and know the nature of the act.
>
> Substantial distance means more than a slight or trivial distance. In deciding whether the distance was substantial, you must consider all the circumstances relating to the movement. Thus, in addition to considering the actual distance moved, you may also consider other factors such as *[whether the distance the other person was moved was beyond that merely incidental to the commission of _____ < insert associated crime>]*, whether the movement increased the risk of physical or psychological harm, increased the danger of a foreseeable escape attempt, gave the attacker a greater opportunity to commit additional crimes, or decreased the likelihood of detection.
>
> The defendant is not guilty of kidnapping if he reasonably and actually believed that the other person consented to the movement. The People have the burden of proving beyond a reasonable doubt that the defendant did not reasonably and actually believe that the other person consented to the movement. If the People have not met

this burden, you must find the defendant not guilty of this crime.

The defendant is not guilty of kidnapping if the other person consented to go with the defendant. The other person consented if she (1) freely and voluntarily agreed to go with or be moved by the defendant, (2) was aware of the movement, and (3) had sufficient maturity and understanding to choose to go with the defendant. The People have the burden of proving beyond a reasonable doubt that the other person did not consent to go with the defendant. If the People have not met this burden, you must find the defendant not guilty of this crime.

Consent may be withdrawn. If, at first, a person agreed to go with the defendant, that consent ended if the person changed her mind and no longer freely and voluntarily agreed to go with or be moved by the defendant. The defendant is guilty of kidnapping if after the other person withdrew consent, the defendant committed the crime as I have defined it.

Resp. Ex. 1 at 217-18. This language was taken directly from CALCRIM 1215, and the bracketed portion appears as a suggestion in that instruction.

Petitioner contends that, had the bracketed language been included, the jury would not have found asportation (movement by a "substantial distance") beyond a reasonable doubt. Pet. 40-44. Petitioner posits that, with this instruction, the jury would have concluded that movement was incidental to Petitioner's other crimes (false imprisonment, oral copulation, digital penetration, spousal corporal injury, criminal threats), found that the other factors in CALCRIM 1215 did not weigh in favor of "substantial distance," and thus found there was no asportation. *Id.* Petitioner also claims that he received ineffective assistance of counsel because his trial and appellate counsel did not raise this issue at trial or on direct appeal. *Id.* at 33-34.

The Superior Court rejected this claim in Petitioner's state habeas petition, reasoning as follows:

As only a partial transcript is provided regarding this claim, the Court cannot discern whether there was an agreement that the missing part of CALCRIM 1215 was stipulated to or no between the parties or inadvertently left out, etc. The Petitioner is silent as to whether there was any stipulation. Petitioner did not include a copy of the written jury instruction provided to the jury either. It is well settled that a habeas corpus petition must, at a minimum, (i) "state fully and with particularity the facts on which relief is sought" and (ii) "include copies of reasonably available documentary evidence supporting the claims, including pertinent portions of trial transcripts

or affidavits or declarations." (*People v. Duvall* (1995) 9 Cal. 4th 464, 475; *In re Martinez* (2009) 46 Cal. 4th 945, 955-56.) Petitioner simply makes conclusive statements without providing the necessary supporting materials or facts as noted above.

Petitioner may or may not have failed to raise this issue on appeal. However, Petitioner does so now under the rubric of ineffective Assistance of Counsel by the trial and appellate attorney. As such, this claim as presented is denied.

Resp. Ex. 17 at 7.

Before turning to the merits of Petitioner's habeas claim, the Court must first determine the extent to which the Superior Court's reasoning guides its review. Ordinarily, where, as here, a state supreme court has denied a claim summarily, a federal habeas court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). However, this presumption is rebuttable. *Id.* Specifically, "the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed." *Id.*

Here, the Court finds that this presumption has been rebutted at least with respect to Petitioner's fourth claim. The Superior Court rejected Petitioner's habeas claim under *Duvall*, which, under California law, indicates that a petitioner has failed to state his claim with sufficient particularity for the state court to examine the merits of the claim and/or has failed to "include copies of reasonably available documentary evidence supporting the claim, including pertinent portions of trial transcripts and affidavits or declarations." *Duvall*, 9 Cal. 4th at 474. When Petitioner's appeal ultimately reached the California Supreme Court, the California Supreme Court had the benefit of reading the Superior Court's decision but nevertheless chose to ask for responsive briefing on the merits, i.e., "[w]hether petitioner has established a prima facie case for relief, such that this court should grant the petition for review, and transfer the matter to the Court of Appeal with instructions to issue an order to show cause." Resp. Ex. 15. In response, the

government gave both procedural and reasons on the merits for denying Petitioner's claim. Resp. Ex. 13 at 33-45, Dkt. No. 14-13 at 114-26. The California Supreme Court then denied review. Resp. Ex. 15. Based on this record, where the California Supreme Court could have remanded Petitioner's claim for procedural deficiencies but instead chose to deny review, it appears that the California Supreme Court rejected Petitioner's claim on the merits. This is sufficient to overcome the presumption that the California Supreme Court's "unexplained decision adopted the same reasoning" as the lower courts. *Wilson*, 138 S. Ct. at 1192. Accordingly, the Court finds that Petitioner has exhausted his remedies with respect to this claim and will proceed to review it on the merits. Where, as here, "the state court supplies no reasoned decision," the Court must "perform an 'independent review of the record' to ascertain whether the state court decision was objectively unreasonable." *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). The Court thus conducts an independent review of the record to evaluate the merits of Petitioner's claim.

### a. Due Process and Right to Fair Trial

Although instructional errors are cognizable in federal habeas corpus, they "generally may not form the basis for federal habeas relief." *Gilmore v. Taylor*, 508 U.S. 333, 344 (1993). It is not enough that the instruction was incorrect as a matter of state law. *Estelle v. McGuire*, 502 U.S. 62, 71–72 (1991). Habeas relief is available if "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* at 72 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). "[A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Boyde v. California*, 494 U.S. 370, 378 (1990) (quoting *Cupp*, 414 U.S. at 146-47). Due process does not require that an instruction be given unless the evidence supports it. *See Hopper v. Evans*, 456 U.S. 605, 611 (1982); *Menendez v. Terhune*, 422 F.3d 1012, 1029 (9th Cir. 2005). The defendant is not entitled to have jury instructions raised in his or her precise terms where the given instructions adequately embody the defense theory. *United States v. Del Muro*, 87 F.3d 1078, 1081 (9th Cir. 1996); *United States v. Tsinnijinnie*, 601 F.2d 1035, 1040 (9th Cir. 1979).

1  Here, the California Supreme Court reasonably concluded that the trial court's decision to

2 not include the "merely incidental" language in its kidnapping instruction did not deprive

3 Petitioner of due process. None of Petitioner's associated crimes—false imprisonment, oral

4 copulation, digital penetration, spousal corporal injury, and criminal threats—involved substantial

5 movement. Thus, the jury did not need to consider whether T.'s movement was incidental to

6 Petitioner's associated crimes—to the extent the jury found that T. was substantially moved, it

7 could only be attributed to kidnapping. As such, the evidence did not support the inclusion of the

8 "merely incidental" language, and, as a consequence, it was not required by due process. *See*

9 *Hopper*, 456 U.S. at 611.

10  Further, even if omission of the "merely incidental" language was error, it was harmless.

11 A jury instruction that omits an element of an offense is constitutional error subject to "harmless

12 error" analysis. *See Neder v. United States*, 527 U.S. 1, 8-11 (1999); *Evanchyk v. Stewart*, 340

13 F.3d 933, 940 (9th Cir. 2003). The omission will be found harmless unless it "'had substantial and

14 injurious effect or influence in determining the jury's verdict.'" *Roy*, 519 U.S. at 4 (quoting

15 *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)); *see Roy v. Gomez*, 108 F.3d 242, 242 (9th Cir.

16 1997) (on remand after *California v. Roy*). Here, the "merely incidental" language was simply one

17 additional factor which the jury was instructed to consider in determining whether Petitioner's

18 movement of T. was "substantial." The jury was also instructed that "[s]ubstantial distance means

19 more than a slight or trivial distance" and that it "must consider all the circumstances" in deciding

20 whether the distance was "substantial." As such, the more substantial movement associated with

21 Petitioner's kidnapping charge would have weighed much more heavily in the juror's minds than

22 more trivial movements incident to Petitioner's other largely stationary crimes (false

23 imprisonment, oral copulation, digital penetration, spousal corporal injury, criminal threats).

24 Accordingly, any additional consideration they would have given to these trivial movements could

25 not have had a "substantial and injurious effect or influence" in reaching a conclusion about

26 "substantial movement."

27

Accordingly, because the trial court's omission of the "merely incidental" language did not deprive Petitioner of due process and, even if it did, this was harmless error, Petitioner is not entitled to habeas relief on this claim.

### b. Ineffective Assistance of Counsel

As discussed above, a claim for ineffective assistance of counsel must satisfy the two-prong test set forth in *Strickland*, 466 U.S. at 687. First, Petitioner must demonstrate that counsel's performance was deficient, i.e., that it "so undermined the proper functioning of the adversarial process that the [proceedings] cannot be relied on as having produced a just result." *Id*. at 686-87. Second, Petitioner must demonstrate that counsel's deficient performance prejudiced him, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

Here, the California Supreme Court reasonably determined that Petitioner did not receive ineffective assistance of counsel because his trial and appellate counsel failed to complain about the omission of the "merely incidental" language. Objectively reasonable trial counsel could have concluded that this language was inapplicable in Petitioner's case, given that the other crimes involved in this case do not involve movement from one place to another. In a similar vein, objectively reasonable appellate counsel could have concluded that this omission did not rise to the level of a due process violation because, as discussed above, due process does not require that an instruction be given unless the evidence supports it. *See Hopper*, 456 U.S. at 611. Neither trial nor appellate counsel are obligated to raise weak or frivolous arguments. *See Jones*, 463 U.S. at 751-54; *Knowles*, 556 U.S. at 125. As such, neither trial nor appellate counsel's performance was deficient under the first prong of *Strickland*, and the determination that there was no ineffective assistance of counsel was not unreasonable. Petitioner is not entitled to habeas relief on this claim.

### v. Double Jeopardy and Deprivation of Due Process and a Fair Trial Due to False Imprisonment Conviction

Petitioner's fifth claim is that his conviction for false imprisonment violates his due

process, fair trial, and double jeopardy rights because false imprisonment is a lesser included offense of kidnapping. Pet. 45-46. Petitioner also argues that appellate counsel rendered ineffective assistance by failing to raise this issue on appeal. *Id.* at 46.

The Superior Court rejected this claim in Petitioner's state habeas petition, reasoning as follows:

> It is unclear by the argument how the false imprisonment may or may not be a Lessor Included Offense to Kidnapping. If the false imprisonment occurred before or after the kidnapping, then it may very well not be a lessor included offense. The Petitioner provides conclusive argument, but does not provide the factual basis for what was testified to by the witnesses and what was argued by the prosecution in order for the Court to make a determination. Further, the sentencing abstract is not included nor the appellate decision regarding its findings on the False Imprisonment. As such, the Petitioner has not provided the appropriate documentation required in order for the Court to render a decision. (*Duvall* (1995) 9 Cal. 4th *supra*, at 475; *In re Martinez* (2009) 46 Cal. 4th *supra*, at 955-56.) As such, the claim as presented is denied.

Resp. Ex. 17 at 7.

As with Petitioner's fourth claim, Petitioner's fifth claim was rejected by the Superior Court on procedural grounds under *Duvall*. However, for the same reasons discussed above with respect to Petitioner's fourth claim, it appears that, here, the Supreme Court rejected this claim on its merits. Thus, its decision rests on a different ground than that expressed in the Superior Court's decision. Accordingly, the Court finds that the presumption that the look-through doctrine applies is rebutted, and proceeds to review Petitioner's fifth claim on the merits. Because the California Supreme Court did not explain its reasons for denying review, the Court "perform[s] an 'independent review of the record' to ascertain whether the state court decision was objectively unreasonable." *Himes*, 336 F.3d at 853.

### a. Double Jeopardy

The Double Jeopardy Clause of the Fifth Amendment guarantees that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. In *Benton v. Maryland*, 395 U.S. 784 (1969), its protections were held applicable to the states

through the Fourteenth Amendment. The guarantee against double jeopardy protects against (1) a second prosecution for the same offense after acquittal or conviction, and (2) multiple punishments for the same offense. *See Witte v. United States*, 515 U.S. 389, 395-96 (1995); *United States v. DiFrancesco*, 449 U.S. 117, 129 (1980); *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969); *Staatz v. Dupnik*, 789 F.2d 806, 808 (9th Cir. 1986).

Here, there is no dispute that Petitioner has only been prosecuted once. Thus, if his convictions for kidnapping and false imprisonment violate the double jeopardy clause, it must be on this second basis—that Petitioner received multiple punishments for the same offense.

In contrast to the double jeopardy protection against successive prosecutions, this second component of double jeopardy—protection against multiple punishments—is designed to ensure that the sentencing discretion of courts is confined to the limits established by the legislature. *See Garrett v. United States*, 471 U.S. 773, 793 (1985); *Ohio v. Johnson*, 467 U.S. 493, 499 (1984); *Brown v. Ohio*, 432 U.S. 161, 165 (1977). Because the substantive power to prescribe crimes and determine punishments is vested with the legislature, the question under the Double Jeopardy Clause whether punishments are "multiple" is essentially one of legislative intent. *See Missouri v. Hunter*, 459 U.S. 359, 366-68 (1983). When the legislature intends to impose multiple punishments, there is no double jeopardy. *Plascencia v. Alameda*, 467 F.3d 1190, 1204 (9th Cir. 2006).

In federal courts, the "same elements" test established in *Blockburger v. United States*, 284 U.S. 299, 304 (1932), which asks "whether each provision requires proof of a fact which the other does not," ordinarily determines whether crimes are indeed separate and whether cumulative punishments may be imposed. *See Rutledge v. United States*, 517 U.S. 292, 297 (1996). However, "simply because two criminal statutes may be construed to proscribe the same conduct under the *Blockburger* test does not mean that the Double Jeopardy Clause precludes the imposition, in a single trial, of cumulative punishments pursuant to those statutes." *Hunter*, 459 U.S. at 368. Rather, "[w]ith respect to cumulative sentences imposed in a single trial, the Double

1  Jeopardy Clause does no more than prevent the sentencing court from prescribing greater

2  punishment than the legislature intended." *Id*. at 366.

3  In California, "[a] defendant . . . cannot be convicted of both an offense and a lesser

4  offense necessarily included within that offense, based upon his or her commission of the identical

5  act." *People v. Sanchez*, 24 Cal.4th 983, 987 (2001). Thus, California law bars simultaneous

6  conviction of lesser included offenses, but only if the convictions are based on the "commission of

7  the identical act." *Id*.

8  Here, the government concedes that, under California law, false imprisonment is a

9  necessarily included offense of kidnapping. Resp. at 40. However, Petitioner offers no evidence

10  or argument that his conviction for false imprisonment was based on "the identical act" that his

11  conviction for kidnapping was based on. Indeed, as discussed above, the evidence at trial tended

12  to describe Petitioner's offenses cumulatively, without precisely defined starting and ending times.

13  As such, it is at least possible that his convictions for false imprisonment and kidnapping were not

14  based on identical acts. For example, it could be that Petitioner falsely imprisoned T. over a

15  general period of six or seven hours, but only kidnapped her—as limited by the asportation

16  element—over only the span of time that it took to drag her from one location to another.

17  Accordingly, Petitioner has not shown that he is entitled to habeas relief because his rights under

18  the Double Jeopardy Clause were violated.

19  **b. Due Process and Fair Trial**

20  Petitioner provides no arguments to support his due process claim apart from his double

21  jeopardy complaints. As such, he has effectively waived this claim. *See United States v. Graf*,

22  610 F.3d 1148, 1166 (9th Cir. 2010) ("Arguments made in passing and not supported by citations

23  to the record or to case authority are generally deemed waived."). Moreover, even if the Court

24  were to consider it on the merits, it does not appear that his convictions for false imprisonment and

25  kidnapping fail to "comport with prevailing notions of fundamental fairness." *Trombetta*, 47 U.S.

26  at 485. As discussed above, it is at least possible that these convictions were based on different

27

28

United States District Court
Northern District of California

acts, and Petitioner offers no argument to the contrary. Accordingly, Petitioner is not entitled to habeas relief on this theory.

### c. Ineffective Assistance of Counsel

As discussed above, a claim for ineffective assistance of counsel must satisfy the two-prong test set forth in *Strickland*, 466 U.S. at 687. First, Petitioner must demonstrate that counsel's performance was deficient, i.e., that it "so undermined the proper functioning of the adversarial process that the [proceedings] cannot be relied on as having produced a just result." *Id*. at 686-87. Second, Petitioner must demonstrate that counsel's deficient performance prejudiced him, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

Here, objectively reasonable counsel could have concluded that, because Petitioner's false imprisonment and kidnapping charges could have corresponded to different "acts," his conviction did not violate the Double Jeopardy Clause nor deprive him of due process. As such, objectively reasonable trial and appellate counsel could have determined that it would have been futile or frivolous to raise these complaints, and their refraining from doing so does not amount to deficient performance under the first prong of *Strickland*. *See Jones*, 463 U.S. at 751-54 (appellate counsel does not have a duty to raise every nonfrivolous issue); *Knowles*, 556 U.S. at 125 ("It was not unreasonable for the state court to conclude that his defense counsel's performance was not deficient when he counseled [petitioner] to abandon a claim that stood almost no chance of success."). Thus, Petitioner is not entitled to habeas relief on this claim.

### vi. Deprivation of Due Process and a Fair Trial Due to Instruction Regarding Trivial Distances

Petitioner's sixth claim is that he was denied due process and a fair trial because the trial court's jury instruction on kidnapping failed to instruct the jury that trivial distances did not require a consideration of context. Pet. 47-50. Petitioner argues this is contrary to the California Supreme Court's decision in *People v. Martinez*, 20 Cal. 4th 225 (1999), which, according to Petitioner, provides that a jury need not consider contextual factors and that, if a victim is moved a

very short distance, contextual factors alone cannot prove that the movement was for a substantial distance. *Id.*

The Court of Appeal rejected Petitioner's claim on direct appeal, summarizing the relevant facts and reasoning as follows:

> The court orally instructed the jury as follows: "Substantial distance means more than a slight or trivial distance. [¶] In deciding whether a distance was substantial, you must consider all the circumstances related to the movement. Thus, in addition to considering the actual distance moved, you also must consider other factors such as whether the movement increased the risk of physical or psychological harm, increased the danger of the foreseeable escape attempt, gave the attacker a greater opportunity to commit additional crimes, or decreased the likelihood of detection." Written instructions were provided to the jury and they differed in using the words "you may consider," rather than "you also must consider," before listing the contextual factors. The written instruction matches the part of CALCRIM No. 1215 that deals with asportation.
>
> Allen did not object to the oral or written version of the instruction. However, Allen now argues that the instruction is flawed in the following ways: (1) both the written and oral instruction require the jury to consider all the circumstances, even though the jury is permitted to determine the issue based on the actual distance alone; (2) the oral instruction required the jury to consider the contextual factors; and (3) the instruction does not convey that if the victim was moved for a very short distance, contextual factors are not enough to establish that the movement was for a substantial distance.
>
> We consider the issue on the merits because Allen also raises the issue under the rubric of ineffective assistance of counsel.
>
> We first consider whether it was error to instruct the jury that in determining whether a distance is "substantial," the jury must consider all of the circumstances. The *Martinez* court stated that an instruction that "the jury should consider the totality of the circumstances" would be proper. (*Martinez*, *supra*, 20 Cal. 4th at p. 237, italics added.) However, the court also stressed that the jury must find that the distance is "'substantial in character.'" (Ibid., italics added.) When the distance involved is large enough that no reasonable person would question that it is substantial in character, other circumstances may be irrelevant, but a defendant could not then be prejudiced by an instruction that the jury must consider all of the circumstances. But when, as here, the distance is not so large, it is not possible for a jury to determine if distance is substantial "in character" without considering evidence other than the distance alone and it is not error to instruct the jury that it must consider all of the circumstances. The bench notes for CALCRIM 1215 capture this distinction between distances that are facially substantial and

those that are not by providing that the contextual factors listed in the instruction may be omitted "in the case of simple kidnapping, if the movement was for a substantial distance." We conclude that it was not error for the court to instruct the jury that it must consider the totality of the circumstances because the distance involved in this case was not so large that the jury, without considering more than distance, could conclude that it was "substantial in character." We next consider the issue of the difference between the oral version of the instruction (requiring the jury to consider the contextual factors) and the written version (permitting but not requiring the jury to consider the contextual factors). "'To the extent a discrepancy exists between the written and oral versions of the jury instructions, the written instructions provided to the jury will control.'" (*People v. Edwards* (2013) 57 Cal. 4th 658, 746 (*Edwards*).)

The *Martinez* court wrote that consideration of factors other than actual distance "should apply in all cases involving simple kidnapping." (*Martinez*, *supra*, 20 Cal. 4th at p. 235, italics added.) It is true that the court observed that "contextual factors, whether singly or in combination, will not suffice to establish asportation if the movement is only a very short distance" (*id*. at p. 237), but the court did not imply that it would be improper, in such a case, for the jury to consider the contextual factors.[7] Because it is never improper for a jury to consider the contextual factors, the difference between the oral and written versions of the instruction presents "no 'reasonable likelihood the jury applied the challenged instruction in an impermissible manner.'" (*Edwards*, *supra*, 57 Cal. 4th at p. 746.)

Resp. Ex. 8 at 12-14 (footnote in original).

Although Petitioner argues this claim on the merits, the Court cannot entertain his claim on this basis. As discussed above, a federal court will not review questions of federal law decided by a state court if the decision also rests on a state law ground that is independent of the federal question and adequate to support the judgment. *Coleman*, 501 U.S. at 729-30. The Ninth Circuit has recognized and applied the California contemporaneous objection rule in affirming denial of a

---

[7] Allen argues that the instruction did not inform the jury that "when the distance of movement is too brief, contextual factors alone cannot establish movement for a substantial distance." Nothing in *Martinez* implies that the court has a duty to so inform the jury and we believe that such an instruction would needlessly confuse the jury. CALCRIM No. 1215 correctly informs the jury that a substantial distance is one that is more than slight or trivial. To go further and instruct the jury that the contextual factors are not relevant if the distance is "very short" would leave the jury without objective guidance about when it should and should not consider contextual factors. We take the court's observation concerning the irrelevance of contextual factors when the distance is "very short" to be guidance for trial courts in determining whether a charge should be submitted to a jury and for appellate courts in evaluating sufficiency of the evidence.

Case No.: [5:15-cv-04387-EJD](5:15-cv-04387-EJD)
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY

33

1    federal petition on grounds of procedural default where there was a complete failure to object at

2    trial. *See Inthavong v. Lamarque*, 420 F.3d 1055, 1058 (9th Cir. 2005); *Paulino v. Castro*, 371

3    F.3d 1083, 1092-93 (9th Cir. 2004); *Vansickel v. White*, 166 F.3d 953, 957-58 (9th Cir. 1999).

4         Here, as the Court of Appeal noted, Petitioner did not object to this jury instruction at trial.

5    Resp. Ex. 8 at 12. Accordingly, Petitioner procedurally defaulted this claim. *See, e.g.*, *Inthavong*,

6    420 F.3d at 1058 (applying the California contemporaneous objection rule in affirming denial of a

7    federal petition on grounds of procedural default where there was a complete failure to object at

8    trial). As such, the Court of Appeal's decision rests on an independent and adequate state law

9    ground, which bars Petitioner's federal habeas claim. *See Coleman*, 501 U.S. at 729-30.

10        In cases in which a state prisoner has defaulted his federal claims in state court pursuant to

11   an independent and adequate state procedural rule, federal habeas review of the claims is barred

12   unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the

13   alleged violation of federal law, or demonstrate that failure to consider the claims will result in a

14   fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. Here, Petitioner does not argue

15   that his case falls within either exception. Accordingly, his procedural default cannot be excused

16   on this basis. As such, Petitioner's claim is procedurally defaulted and he is not entitled to habeas

17   relief.

18        Further, even if the Court were to consider Petitioner's sixth claim on its merits, Petitioner

19   would not be entitled to habeas relief. A challenge to a jury instruction solely as an error under

20   state law does not state a claim cognizable in federal habeas corpus proceedings. *See Estelle*, 502

21   U.S. at 71-72. Instead, to obtain federal collateral relief for errors in the jury charge, a petitioner

22   must show that the ailing instruction by itself so infected the entire trial that the resulting

23   conviction violates due process. *See Estelle*, 502 U.S. at 72; *Cupp*, 414 U.S. at 147. The

24   instruction may not be judged in artificial isolation, but must be considered in the context of the

25   instructions as a whole and the trial record. *See Estelle*, 502 U.S. at 72.

26        The Court of Appeal did not unreasonably apply federal law when it concluded that the

27

28   Case No.: 5:15-cv-04387-EJD
     ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE
     OF APPEALABILITY

United States District Court
Northern District of California

jury was not mislead by the trial court's instruction on kidnapping. As the Court of Appeal correctly pointed out, the trial court's written instruction (and, for that matter, oral instruction at least as it applied to Petitioner) correctly reflected California law on "substantial distance." The written instruction simply informed the jury that, in addition to the actual distance moved, it "may" consider other contextual factors. This is consistent with *Martinez*. *See Martinez*, 20 Cal. 4th at 237 ("it would also be proper for the court to instruct . . . the jury should consider the totality of the circumstances"). In addition, although the oral instruction informed the jury that it "must" consider contextual factors, this would not have led the jury to incorrectly apply California law in Petitioner's case. As Petitioner himself concedes, the actual distance that T. was moved was relatively small, Pet. 48; thus, it would have been proper for the jury to consider other contextual factors in determining whether her movement was "substantial."

Petitioner's argument to the contrary is not persuasive. Petitioner argues that the trial court's instruction contradicts the California Supreme Court's observation in *Martinez*, 20 Cal. 4th at 237 that "contextual factors, whether singly or in combination, will not suffice to establish asportation if the movement is only a very short distance." As an initial matter, this is dicta and, as such, is not controlling California law. Moreover, even if it were, the trial court's instruction does not run afoul of this principle. In both oral and written form, the trial court instructed the jury that "[s]ubstantial distance means more than a slight or trivial distance" and that, in addition to contextual factors, it must consider actual distance moved. Resp. Ex. 8 at 12. Thus, it is not the case that the jury was instructed to determine whether T.'s movement was substantial based on contextual factors alone. Accordingly, the trial court's instruction is consistent with *Martinez* and California law on "substantial distance."

With no identified error in the instruction, it was not unreasonable for the Court of Appeal to conclude that the jury was not misled. Accordingly, it also cannot be the case that upholding Petitioner's conviction on his basis violates due process. *See Estelle*, 502 U.S. at 72 ("[t]he only question for us is 'whether the ailing instruction by itself so infected the entire trial that the

resulting conviction violates due process.'"); *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974) ("'[I]t must be established not merely that the instruction is undesirable, erroneous, or even "universally condemned," but that it violated some [constitutional right]'"). Thus, Petitioner is not entitled to habeas relief on this claim.

### vii. Deprivation of Due Process Due to Insufficient Evidence of Forcible Copulation Conviction

Petitioner's seventh claim is that he was denied due process because there was insufficient evidence to prove that he committed the crime of forcible oral copulation. Pet. 51-55. In particular, Petitioner argues that there was insufficient evidence that oral copulation was accomplished by "force, violence, duress, menace, or fear of immediate and unlawful bodily injury," Cal. Penal Code § 288a(c), because T. testified at trial that this act was consensual and the other evidence in the record was insufficient to permit the jury to find to the contrary. *Id.*

The Court of Appeal rejected Petitioner's claim on direct appeal, summarizing the relevant facts and reasoning as follows:

> Allen contends that insufficient evidence supports his convictions for oral copulation by force and kidnapping. We disagree.
>
> #### A. Legal Standard
>
> "The proper test for determining a claim of insufficiency of evidence in a criminal case is whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] On appeal, we must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] [¶] Although we must ensure the evidence is reasonable, credible, and of solid value, nonetheless it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends. [Citation.] Thus, if the verdict is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder. [Citations.]' " (*People v. Ochoa* (1993) 6 Cal. 4th 1199, 1206, quoting *People v. Jones* (1990) 51 Cal. 3d 294, 314.)
>
> "Substantial evidence is defined as 'evidence that is reasonable, credible, and of solid value-from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt.' "

(*People v. Whalen* (2013) 56 Cal. 4th 1, 55.)

### B. Oral Copulation by Force

Oral copulation by force requires proof of an "act of oral copulation . . . accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person." (§ 288a, subd. (c)(2)(A).) Allen contends that insufficient evidence supports his conviction for forcible oral copulation because "[T.'s] pretrial statement to the police did not describe any conduct by [Allen], from which the jury could have rationally inferred that [Allen] used force or any of the other methods proscribed by section [288a, subdivision (c)(2)] to complete the act of oral copulation." [T.]'s trial testimony, on the other hand, "was that she performed oral sex voluntarily."

[T.] testified that at one point during the night in question she performed oral sex on Allen. In her earlier statement to police, [T.] did not say that an act of oral sex had been completed, but she said more than once that Allen tried to force her to perform oral sex. It was up to the jury to determine what to believe from [T.]'s trial testimony and what to believe from the earlier statement to the police. Here, the jury could reasonably conclude that an act of oral copulation had been completed, because it was clear that [T.] meant her testimony to exonerate Allen and there would have been no reason for her to fabricate an act of oral sex. But the jury could also have reasonably concluded that Allen forced [T.] to perform the act. Gill testified that when [T.] spoke with him, she appeared to have a clear memory of what had happened, even though she seemed traumatized.

Allen argues that "the statement that [Allen] tried to force [T.] to give him oral sex is not enough. This statement is devoid of evidentiary value since it does not actually describe what appellant said or did and does not describe a completed act. Instead, [T.] merely described her own conclusion regarding what [Allen] supposedly wanted her to do. Such a statement does not amount to evidence of ponderable legal significance sufficient to support the judgment on appeal." In so arguing, Allen ignores reasonable conclusions the jury could have drawn from [T.]'s statement to the police.

Allen [sic] told the police: "He proceeded to take my clothes off. My shoes, threw them. My pants, ripped my pants off me. My clothes. Kept me out there. Uhm, sodomized me. Uhm, tried smothering me, killing me, choking me. Uhm ripping my insides from the inside out. Uhm, just I don't know, he just goes crazy. He's just trying to kill me. Basically, trying to kill me and hurt me. Rape me. Wanting me to, uhm, do, give him oral sex or whatever. Tried to force me to give him oral sex. Just kept me out there." This passage describes several specific acts of force perpetrated by Allen on [T.]'s person which the jury could reasonably interpret as intended to force [T.] to perform oral sex. The jury could also conclude that when [T.] did

perform oral sex, it was due to Allen's use of force.

Substantial evidence supports Allen's conviction for forcible oral copulation.

Resp. Ex. 8 at 7-9.

Evidence is constitutionally sufficient to support a conviction when, "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam) ("[I]t is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial."). The reviewing court presumes that the trier of fact resolved any factual conflicts in the record in favor of the prosecution and defers to that resolution. *Jackson*, 443 U.S. at 326. The U.S. Supreme Court has "made clear that [sufficiency-of-the-evidence] claims face a high bar in federal habeas proceedings." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam).

Here, the Court of Appeal's determination that sufficient evidence supported Petitioner's forcible oral copulation conviction was not objectively unreasonable. The Court of Appeal explained that the jury could have reasonably concluded that T. performed oral sex due to Petitioner's use of force, as her statement to police described several specific acts of force which Petitioner committed over the course of the night. *See* Resp. Ex. 3 at 1-9. This list of acts was extensive and T.'s described them with particularity; for example, T. stated that Petitioner "t[ook] my clothes off," "[k]ept me out there," "sodomized me," "tried smothering me, killing me, choking me . . ." *Id.* Construing this evidence in the light most favorable to the prosecution, a rational jury could have used these acts as context and concluded that Petitioner accomplished oral copulation by way of force. This conclusion becomes even stronger when considered in the context of other evidence which also suggested the use of force, including eyewitness testimony that she appeared visibly shaken and traumatized, and medical evidence of substantial injuries (e.g., bruises, scrapes, and dried blood in multiple places on her body and the mangled hair and bald spot). *See, e.g.*, Resp. Ex. 2 at 159, 170-74, 313-16, 323, 328, 339, 351-58, 397, 403. While

it is true that T. testified at trial that she performed oral sex consensually, the jury was entitled to weigh this testimony against this other evidence. As such, it could have decided to disbelieve T.'s testimony and instead conclude that Petitioner accomplished oral copulation by force. As such, the Court of Appeals reasonably determined that there was constitutionally sufficient evidence to satisfy this element of the crime.

Petitioner nevertheless argues that there is insufficient evidence that oral copulation was "forcible" because there is no affirmative testimony from T. on this point. Pet. 53-55. For example, Petitioner points out that T. testified that the oral sex was consensual, that T. did not mention forcible oral sex in her jailhouse call, that she also told the police that Petitioner "just wanted" oral sex, and also argues that it is unclear, from the evidence, how the events of the night unfolded chronologically. *Id.* However, a jury does not need direct testimony from a victim in order to find that the prosecution has proven an element of a crime; circumstantial evidence can suffice. Accordingly, the lack of direct testimony from T. does not mean that there was insufficient evidence of "forcible" oral copulation. Rather, for the reasons discussed above, this evidence was constitutionally sufficient. Accordingly, Petitioner is not entitled to habeas relief on this claim.

### viii. Deprivation of Due Process Due to Insufficient Evidence of Kidnapping

Petitioner's eighth claim is that he was denied due process because there was insufficient evidence to prove that he committed the crime of simple kidnapping. Pet. 51-55. In particular, Petitioner contends that there was insufficient evidence of asportation (movement by a "substantial distance") because there was no direct evidence that Petitioner moved T., the circumstantial evidence only established that she was moved 10-15 feet, and that her movement was to a more open area, which decreased the risk of harm. *Id.*

The Court of Appeal rejected Petitioner's claim on direct appeal, summarizing the relevant facts and reasoning as follows:

> Allen was charged with a violation of section 207, subdivision (a):
> "Every person who forcibly, or by any other means of instilling fear,

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY

United States District Court
Northern District of California

steals or takes, or holds, detains, or arrests any person in this state, and carries the person into another country, state, or county, or into another part of the same county, is guilty of kidnapping." "[T]he prosecution must generally 'prove three elements: (1) a person was unlawfully moved by the use of physical force or fear; (2) the movement was without the person's consent; and (3) the movement of the person was for a substantial distance.' [Citation.] This last element, i.e., that the victim be moved a substantial distance, is called the 'asportation' element." (*People v. Bell* (2009) 179 Cal. App. 4th 428, 435.)

It was the People's theory that Allen committed kidnapping by the act of taking [T.] from the Toyota, after he had broken its driver's side window, to a location in the brush, 10 to 15 feet away, where Allen and [T.] were later found by Silvey. Allen contends that insufficient evidence supports a finding of the asportation element of kidnapping.

To satisfy the asportation element, "the movement must be 'substantial in character.'" (*People v. Martinez* (1999) 20 Cal. 4th 225, 235.) Determining whether movement is substantial in character "arguably should include some consideration of the 'scope and nature' of the movement or changed environment, and any increased risk of harm." (*Id*. at p. 236.) Factors contributing to a finding of an increased risk of harm include: (1) diminished likelihood of discovery; (2) the opportunity for the commission of additional crimes; and (3) the possibility of injury from foreseeable attempts to escape. (*Ibid*.) Nevertheless, "[w]hile the jury may consider a victim's increased risk of harm, it may convict of simple kidnapping without finding an increase in harm, or any other contextual factors. Instead, as before, the jury need only find that the victim was moved a distance that was 'substantial in character.'" (*Id*. at p. 237.) Moreover, "contextual factors, whether singly or in combination, will not suffice to establish asportation if the movement is only a very short distance." (*Ibid*.)

Allen first argues that 10 to 15 feet is a very short distance, legally insufficient to support asportation. In *People v. Arias* (2011) 193 Cal. App. 4th 1428, 1435 (*Arias*), the court affirmed a kidnapping conviction in which the victim was moved 15 feet. Although, as Allen points out, the victim in *Arias* was moved at gunpoint away from a public area into the seclusion of a private apartment (id. at pp. 1434-1435), and *Arias* can be distinguished on that basis, the case is precedent that a movement of 15 feet can be enough to support the asportation element. Allen relies on the fact that Justice Armstrong, in dissent, called the 15-foot distance at issue in *Arias* "very short." (*Id*. at p. 1447 (dis. opn of Armstrong, J.).) However, Justice Armstrong's dissenting conclusion was based on the "totality of the circumstances," which included not only "the very short distance involved," but also "the fact that [the victim] simply walked down the hall, and the absence of evidence of an increased risk of harm." (*Id*. at pp. 1447-1448.)

The California Supreme Court has "'resisted setting a specific number of feet as the required minimum distance.'" (*People v. Dominguez* (2006) 39 Cal. 4th 1141, 1155.) In *Martinez*, the court noted: "[A]s we have historically recognized for both aggravated and simple kidnapping, limiting a trier of fact's consideration to a particular distance is rigid and arbitrary, and ultimately unworkable." (*Martinez, supra*, 20 Cal. 4th at p. 236.) We decline to do what our Supreme Court has resisted doing and will not conclude that, as a matter of law, a movement of 10 to 15 is insufficient to support asportation.[8]

Allen next argues that even if 10 to 15 feet is not legally insufficient to support a conviction for simple kidnapping, none of the contextual factors that a jury may consider, under *Martinez*, supports a conviction. Among the contextual factors that a jury may consider is the opportunity for the commission of additional crimes. Allen contends that movement from a more secluded area (the interior of the Toyota) into a more open area decreased the opportunity to commit other crimes. We disagree.

The jury could reasonably have found that by taking [T.] out of the truck and placing her on the ground in the brush, [T.] had a greater opportunity to commit a variety of assaults. Outside of the truck, Allen had ready access to the debris on the ground, which he "stuffed" inside [T.]. By laying [T.] on the ground, free from obstructions, and lying on top of her, Allen was better positioned to injure [T.]'s rectum and to "smother" and "choke" her. Had [T.] remained in the Toyota, a jury could reasonably believe that Allen, encumbered by the interior of the vehicle, may not have been able to accomplish such assaults. We conclude that substantial evidence supports a finding that Allen had a greater opportunity for the commission of additional crimes after moving [T.]. Because substantial evidence supports one of the contextual factors that a jury may consider, we conclude that substantial evidence supports Allen's conviction for simple kidnapping.

Resp. Ex. 8 at 9-12.

As also explained above, evidence is constitutionally sufficient to support a conviction when, "viewing the evidence in the light most favorable to the prosecution, any rational trier of

---

[8] The People rely on *People v. Shadden* (2001) 93 Cal. App. 4th 164, l 69, in which the distance at issue was nine feet. However, as Justice Armstrong pointed out in his *Arias* dissent: "[T]he defendant in *Shadden* was not charged with simple kidnapping under section 207, subdivision (a), but with kidnapping with intent to commit rape under section 209, subdivision (b )(l ). '[T]he standard for proving the asportation element of simple kidnapping is not the same as that for aggravated kidnapping.' [Citation.] This is so because, as our Supreme Court has made clear, these two types of kidnapping do not share the same asportation element. ... [Citation.] Thus *People v. Shadden* is not pertinent authority for the issue before us." (*Arias, supra*, 193 Ca1. App. 4th at pp. 1445-1446 (dis. opn. of Armstrong, J.).)

Case No.: 5:15-cv-04387-EJD
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY

41

fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319; *see also Cavazos*, 565 U.S. at 2 ("[I]t is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial."). The reviewing court presumes that the trier of fact resolved any factual conflicts in the record in favor of the prosecution and defers to that resolution. *Jackson*, 443 U.S. at 326. The U.S. Supreme Court has "made clear that [sufficiency-of-the-evidence] claims face a high bar in federal habeas proceedings." *Coleman*, 566 U.S. at 651.

Here, the Court of Appeal's determination that sufficient evidence supported Petitioner's kidnapping conviction was not objectively unreasonable. As the Court of Appeal explained, the California Supreme Court has not set a numerical minimum on what constitutes "substantial" distance, and at least 15 feet has been found to be "substantial" in California cases. Resp. Ex. 8 at 10 (citing *People v. Arias* (2011) 193 Cal. App. 4th 1428, 1435 (2011) and *People v. Dominguez* (2006) 39 Cal. 4th 1141, 1155 (2006)). Accordingly, evidence of only 10-15 feet of movement does not doom the element of asportation. Further, as the Court of Appeal also explained, there were at least some contextual factors that weighed in favor of finding this distance substantial: taking T. out of the car and placing her on the ground in the brush could have objectively increased the risk of harm to her, as it gave Petitioner more space to commit assaults, rocks and debris to use in committing these assaults, and brush to potentially conceal some of his acts. Resp. Ex. 8 at 11. It also separated T. from the car and her cell phone—her best resources for an escape. *Id*. Viewing this evidence in the light most favorable to the prosecution, a rational factfinder could have found that the prosecution proved asportation beyond a reasonable doubt. Accordingly, the Court of Appeal reasonably determined that there was constitutionally sufficient evidence to satisfy this element of the crime.

### ix. Deprivation of Due Process Due to Prosecutor's Closing Argument

Petitioner's ninth claim is that he was denied due process because the prosecutor impermissibly argued to the jury that, to determine the element of asportation, it had to consider

both actual distance and contextual factors.  Pet. 59-60.

The Court of Appeal rejected Petitioner's claim on direct appeal, summarizing the relevant

facts and reasoning as follows:

> In closing argument, the prosecutor addressed the jury concerning asportation as follows: "And, specifically, this crime—I just kind of want to focus on 'substantial distance.'
>
> "I think when people think about kidnapping they think you snatch somebody from one town and take them to another or something like that.
>
> "The instruction tells you that it's not a slight or trivial distance, and some people might think: Well, 10, 15, 20 feet, that's slight or trivial, that's not enough of a distance. And I tell you that's not true.
>
> "In this case the—they give you factors to consider, and these are in the jury instructions.
>
> "It's not just the actual distance to consider. The—you have to consider all of the circumstances.
>
> "Did the movement increase the risk of harm? And I pose to you that it absolutely increased the risk of harm.
>
> "Prior to him breaking out the window and dragging her out and over in the brush, she had reached a relative place of safety locked in a car. She had put some distance between herself and her attacker.
>
> "He, by breaking the window and dragging her out and dragging her to a place that was even a little more remote than where they were to begin with, which is Pacific Shores, which is very remote, he took her to a place that really increased the risk of harm to her.
>
> "It was more easy for him to assault her while she was out there in the brush.
>
> "It would have been much more difficult for him to continue assaulting her in the car, and especially if she were locked in with the window intact.
>
> "Additionally, there was an increased danger of a foreseeable escape attempt, made it much more difficult for her to escape.
>
> "At least in the truck, if she could find a key that worked she would be able to get out of there. So by him breaking the window, dragging her out, he substantially increased the danger of the foreseeable escape attempt.
>
> "And, in fact, we know he did because she was unable to escape.

Case No.: 5:15-cv-04387-EJD
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY

1   She was still trapped underneath him while he was actively
2   assaulting her two hours later.

    "Did it give the defendant a greater opportunity to commit
3   additional crimes? Absolutely. We know he continued to assault her
    for those two hours.

4   "And was there a decreased likelihood of detection? And I pose to
5   you that, yes, there was. Somebody driving by may not have been
    able to see them." Allen did not object to the prosecutor's
6   statements.

7   Allen now contends that the prosecutor committed prejudicial
    misconduct and violated his due process rights by misstating the
8   asportation element. Allen argues that "the prosecutor's
    misstatement of the law was not minor or brief. Although it occurred
9   during a single episode, the prosecutor's argument that the jury had
    to consider the contextual factors and that those factors established
10  the requisite asportation occupied two pages of the reporter's
    transcript." To the contrary, we concluded above that it was not
11  error for the court to instruct the jury that it must consider all of the
    circumstances, and the prosecutor merely restated that part of the
12  instruction. The prosecutor did not state that the jury must consider
    the contextual factors. However, the jury was permitted to consider
13  the contextual factors, and therefore there was nothing objectionable
    in the prosecutor's argument concerning those factors. Accordingly,
14  we reject Allen's assertion of prosecutorial misconduct.

Resp. Ex. 8 at 14-15.

A defendant's due process rights are violated when a prosecutor's misconduct renders a

trial "fundamentally unfair." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *Smith v. Phillips*,

455 U.S. 209, 219 (1982) ("the touchstone of due process analysis in cases of alleged

prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor"). Under

*Darden*, the first issue is whether the prosecutor's remarks were improper; if so, the next question

is whether such conduct infected the trial with unfairness. *Tan v. Runnels*, 413 F.3d 1101, 1112

(9th Cir. 2005).

A prosecutor's mischaracterization of a jury instruction is less likely to render a trial

fundamentally unfair than if the trial court issues the instruction erroneously:

[A]rguments of counsel generally carry less weight with a jury than
do instructions from the court. The former are not evidence, and are
likely viewed as the statements of advocates; the latter, we have
often recognized, are viewed as definitive and binding statements of
the law. Arguments of counsel which misstate the law are subject to

> objection and to correction by the court. This is not to say that prosecutorial misrepresentations may never have a decisive effect on the jury, but only that they are not to be judged as having the same force as an instruction from the court.

*Boyde v. California*, 494 U.S. 370, 384-85 (1989) (citations omitted).

Here, the Court of Appeal reasonably determined that the prosecutor's comments in closing argument did not violate Petitioner's due process rights. The prosecutor merely repeated the trial court's oral instruction on asportation. Resp. Ex. 8 at 14-15. As discussed above in Section II.B.vi, this would not have led the jury to incorrectly apply California law in Petitioner's case. As such, the prosecutor's repetition of this statement in closing argument did not render Petitioner's trial fundamentally unfair. Petitioner is not entitled to relief on this claim.

### x. Ineffective Assistance of Counsel Due to Failure to Object to Instructions or Arguments

Petitioner's tenth claim is that trial counsel rendered ineffective assistance because he failed to object to the court's instruction and the prosecutor's argument in closing on the asportation element of his kidnapping charge. Pet. 62-64. Consistent with his argument in his sixth and ninth claims, Petitioner argues that the trial court and prosecution incorrectly argued that the jury must consider contextual factors and that trial counsel should have objected on this basis. *Id*.

The Court of Appeal rejected Petitioner's claim on direct appeal, reasoning in relevant part as follows:

> Allen contends that his trial counsel rendered ineffective assistance by failing to object to the court's instruction concerning asportation and by failing to object to the prosecutor's alleged misstatement of the law concerning asportation. A showing of ineffective assistance of counsel requires: (1) a showing that counsel's performance was deficient, "in that it fell below an objective standard of reasonableness under prevailing professional norms" and (2) a showing of resulting prejudice. (*People v. Mai* (2013) 57 Cal. 4th 986, 1009.) Because we have already concluded that [petitioner] suffered no prejudice from the instruction concerning asportation or from the prosecutor's argument concerning asportation, we need not further consider this issue.

Resp. Ex. 8 at 15-16.

As discussed above in Sections II.B.vi and II.B.ix, at least the trial court's written jury instruction correctly reflects California law and neither the trial court's instructions (written or oral) nor the prosecutor's arguments during closing would have led the jury to incorrectly apply California law in Petitioner's case. Accordingly, for this reason, trial counsel did not perform in an objectively deficient manner by not challenging the instruction or argument. *See Robbins*, 528 U.S. at 272 (concluding that counsel is not obligated to present nonmeritorious claims). Further, for this same reason, trial counsel's failure to object could not have prejudiced Petitioner. Accordingly, Petitioner's claim fails under both prongs of *Strickland*. He is not entitled to relief on this claim.

### xi. Deprivation of Due Process by Imposing a Separate Punishment for the Spousal Abuse Conviction and the Criminal Threat Conviction

Petitioner's eleventh claim is that he was denied due process because he received separate punishments for spousal abuse and for criminal threat, in violation of California Penal Code § 654.[9] Pet. 65-66. According to Petitioner, these acts were close in time and not separate in purpose; thus, he should have only received one punishment for both. *Id.*

The Court of Appeal rejected Petitioner's claim on direct appeal, reasoning in relevant part as follows:

> The court imposed separate punishment for each of the six counts with which Allen was charged. Allen argues that separate punishment on counts 3, 4, and 5 (infliction of corporal punishment, making criminal threats, and false imprisonment) violates section

---

[9] California Penal Code § 654 provides:

> (a) An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other.

> (b) Notwithstanding subdivision (a), a defendant sentenced pursuant to subdivision (a) shall not be granted probation if any of the provisions that would otherwise apply to the defendant prohibits the granting of probation.

654 because the acts involved in these counts were committed pursuant to a single, indivisible criminal objective of sexually assaulting [T.].

### A. Standard of Review

Section 654, subdivision (a) provides: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other."

"'Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.'" (*People v. Correa* (2012) 54 Cal. 4th 331, 336.) "Where the commission of one offense is merely ' "a means toward the objective of the commission of the other," ' section 654 prohibits separate punishments for the two offenses." (*People v. Wynn* (2010) 184 Cal. App. 4th 1210, 1215, called into doubt on another ground by *People v. Calderon* (2013) 214 Cal. App. 4th 656, 666-667.)

"A trial court's implied finding that a defendant harbored a separate intent and objective for each offense will be upheld on appeal if it is supported by substantial evidence." (*People v. Blake* (1998) 68 Cal. App. 4th 509, 512.)

### B. Infliction of Corporal Punishment

Allen argues that the physical violence that Allen inflicted on [T.] was "part and parcel of the sexual assault." We disagree. The evidence shows that Allen dragged [T.] through the gravel and brush, to the extent that [T.] complained to Allen that her "whole back side" was "road rash." Allen pulled out hair from the right side of [T.]'s head. He hit [T.] in the abdominal area four times "as hard as [he] could." The infliction of these injuries was gratuitous and can reasonably be taken to show an objective to physically injure [T.], separate from an objective to sexually assault [T.]. (*See People v. Galvez* (2011) 195 Cal. App. 4th 1253, 1263 [acts of violence were "gratuitous, extra" and not incidental to attempted witness dissuasion].)

We conclude that separate punishment for infliction of corporal punishment did not violate section 654.

### C. Criminal Threats

In one of the phone calls between Allen and [T.] that was played to the jury, [T.] said: "Then you were smothering me. Then you're all

> like, okay, you got to go now. I'm sorry, you got to go, as you were
> trying to smother me to death." The threat to [T.] while smothering
> her was, like the infliction of corporal punishment, gratuitous and
> extra. A reasonable implication of the threat is that Allen intended to
> put [T.] in fear for her life, a purpose distinct from sexual assault or
> causing physical injury.
>
> We conclude that separate punishment for making a criminal threat
> did not violate section 654.

Resp. Ex. 8 at 16-17.

The constitutional guarantee of due process is fully applicable at sentencing. *See Gardner v. Florida*, 430 U.S. 349, 358 (1977). Federal courts must defer to the state courts' interpretation of state sentencing laws. *See Bueno v. Hallahan*, 988 F.2d 86, 88 (9th Cir. 1993); *cf. Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (A state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.). "Absent a showing of fundamental unfairness, a state court's misapplication of its own sentencing laws does not justify federal habeas relief." *Christian v. Rhode*, 41 F.3d 461, 469 (9th Cir. 1994).

Here, the Court of Appeal fully explained why section 654 was inapplicable to Petitioner's case: the criminal threats to T. were gratuitous and extra, and reflected a purpose that was distinct from Petitioner's sexual assault. Resp. Ex. 8 at 16-17. Even if this Court were concerned that an error was committed, it is not the province of a federal habeas court to correct a misapplication of state sentencing law absent some identified constitutional issue. *See Christian*, 41 F.3d at 469. Petitioner only attacks his separate punishments under the rubric of section 654; he does not separately contend that these punishments (allegedly brought on by the state's misapplication of section 654) created a fundamental unfairness or otherwise violated due process. As such, he has not shown entitlement to habeas relief on this claim.

## IV.  CONCLUSION

After a careful review of the record and pertinent law, the Court concludes that the Petition for a Writ of Habeas Corpus is DENIED.

Further, a Certificate of Appealability is DENIED. *See* Rule 11(a) of the Rules Governing

Section 2254 Cases. Petitioner has not made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Nor has Petitioner demonstrated that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may not appeal the denial of a Certificate of Appealability but may seek a certificate from the Court of Appeals under Rule 22 of the Federal Rules of Appellate Procedure. *See* Rule 11(a) of the Rules Governing Section 2254 Cases.

The Clerk shall terminate any pending motions, enter judgment in favor of Respondent, and close the file.

**IT IS SO ORDERED.**

Dated: August 17, 2018

EDWARD J. DAVILA
United States District Judge